# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

WESLEY D. JONES,                    )
                                   )
                     Petitioner,   )
                                   )
vs.                                )          Case No. 09-CV-020-TCK-PJC
                                   )
RANDY WORKMAN,                     )
                                   )
                     Respondent.   )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Wesley D. Jones, a state inmate appearing pro se. Respondent filed a response (Dkt. # 9) and provided the state court records (Dkt. ## 9, 10, and 11) necessary for adjudication of Petitioner's claims. Petitioner did not file a reply to Respondent's response. For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

### BACKGROUND

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. Following review of the record, including the trial transcripts, the Court finds that the following factual summary by the OCCA is adequate and accurate. Therefore, the Court adopts this portion of the OCCA's summary as its own:

> A few days before September 15, 2002, Murtaza Ali and Shafi Ahmed asked Wesley Jones to kill the owner of the Lucky Trip convenience store, Mohamed Rahaman. On September 15th, Ali drove Jones to the store and identified Rahaman. Jones walked into the store, waited a few moments, then approached the counter and shot and kill Rahaman. When store customer Sterling Mullis, standing nearby, grabbed Jones, Jones also shot and killed him. Jones then fired through the glass door of the store and ran around the corner to Ali's waiting car and fled.

(Dkt. # 9, Ex. 1; Jones v. State, 134 P.3d 150, 153 (Okla. Crim. App. 2006)).

Based on those events, Petitioner and his co-defendant, Murtaza Ali,[1] were both charged with two counts of First Degree Murder in Tulsa County District Court, Case No. CF-2002-4910. Petitioner was tried by a jury. At the conclusion of a two-stage trial, he was found guilty as charged and sentenced to death on each conviction of First Degree Murder. At trial, Petitioner was represented by attorneys Sid Conway and Marna Franklin from the Tulsa County Public Defender's Office.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals (OCCA). On direct appeal, Petitioner was represented by attorney Stuart Southerland from the Tulsa County Public Defender's Office. On April 24, 2006, the OCCA affirmed the trial court's judgments but reversed the death sentences and remanded for resentencing. On January 14, 2008, Petitioner waived his right to a second stage jury trial and was sentenced by the trial court to two sentences of life without parole to be served consecutively.

On February 16, 2005, Petitioner filed an application for post-conviction relief at the OCCA. See Dkt. # 9, Ex. 8. That application, filed in Case No. PCD-2005-144, was dismissed on June 13, 2006, after Petitioner received relief from his death sentences.

Petitioner commenced the instant habeas corpus action by filing his petition on January 15, 2009. See Dkt. # 1. In his petition, he identifies the following grounds of error:

Ground 1:    The jury selection process employed by the trial court violated Appellant's rights pursuant to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as corresponding provisions of the Oklahoma Constitution.

---

[1]On November 14, 2003, Petitioner's co-defendant, Murtaza Ali, was convicted on his pleas of guilty to two amended charges of Accessory After the Fact to First Degree Murder. He was sentenced that day to twenty-five (25) years in custody on each count, to be served concurrently.

Ground 2: It was reversible error to deny sequestered, individualized voir dire in the instant case, violating Appellant's rights pursuant to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as corresponding provisions of Oklahoma law.

Ground 3: It was reversible error to refuse defense counsel's request to remove prospective juror Piland for cause, denying Appellant a fair trial and due process of law pursuant to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as relevant provisions of the Oklahoma Constitution.

Ground 4: It was reversible error to refuse to permit defense counsel to question prospective jurors as to their ability to fairly consider all three sentencing alternatives should they convict Appellant of two counts of First Degree Murder. Appellant's convictions violate the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as relevant provisions of Oklahoma law.

Ground 5: Under the facts of this case, it was reversible error for the trial judge to refuse to permit both defense attorneys to conduct voir dire of the prospective jury panel. As a result, Appellant suffered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Ground 6: Appellant's video-taped statement was admitted into evidence in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Ground 7: It was reversible error to fail to instruct the jury on a lesser-included offense to First Degree Murder as alleged in Count II.

Ground 8: Incorporation of first stage evidence to support aggravators fails to narrow the class of offender subject to death, fails to properly channel the jury's discretion, and violates Appellant's Sixth, Eighth and Fourteenth Amendment rights.

Ground 9: It was reversible error and a violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution to fail to define "life without possibility of parole" for the jury.

Ground 10: It was reversible error to admit evidence of prior bad acts, which were ultimately used as aggravators and not as impeachment. The jury received no instruction or direction as to the appropriate use for the prior felony and other "bad act" testimony elicited by the prosecutor during his cross-

3

examination of Appellant's mitigation expert. Appellant's rights were violated pursuant tot the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as relevant provisions of Oklahoma law.

Ground 11:    As applied to the facts of this case, the "risk of death to more than one person" aggravator sets a standard so vague as to fail to adequately channel the sentencing decision patterns of the jury, rendering the aggravator unconstitutional. The jury's finding of the existence of the aggravator must be reversed, requiring the reversal of the death sentence in Count I.

Ground 12:    The aggravating circumstance of killing to avoid further prosecution is vague and overbroad and thus unconstitutional under state and federal law. Appellant's sentence in Count II must be reversed.

Ground 13:    Appellant's rights under the Sixth, Eighth and Fourteenth Amendments were violated by the trial court's failure to instruct the jury that the death penalty could not be imposed unless the jury first found that aggravation outweighed mitigation beyond a reasonable doubt.

Ground 14:    The instructions on the issue of mitigation permitted the jurors to ignore mitigating evidence, and seriously diminished the effect of the mitigating evidence present in this case. The mitigation instructions violated Appellant's rights pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution.
     a.     The language of the instruction(s) relating to mitigation is misleading and suggests that mitigation is a defense when it is not.
     b.     The instructions to the jury did not require the consideration of mitigation, even if evidence of mitigation was found to exist.

Ground 15:    The evidence was insufficient to support the alleged aggravator "risk of death to more than one person." Further, the mitigating evidence outweighed the evidence in aggravation alleged by both aggravators, requiring the reversal of Appellant's sentence.

Ground 16:    Appellant's conviction for Felony-Murder cannot stand, given the jury's finding that the two murders constituted an aggravating circumstance. His conviction for felony murder violated the Fifth, Eighth and Fourteenth Amendments to the Constitution, as well as corresponding provisions of Oklahoma law.

Ground 17:    The verdict form -- aggravating circumstances -- fails to reveal which aggravator(s) apply to which count(s). Should this Court find the "avoid arrest or prosecution" aggravator invalid in Count II, Appellant's sentence

of death must be reversed for it is impossible to know if the jury made the appropriate finding as to the remaining aggravating circumstance in that count.

Ground 18: The use of identical evidence to support separate aggravators duplicates the aggravators and is unconstitutional.

Ground 19: The jury should have been permitted to consider the twenty-five year sentence imposed upon co-defendant Murtaza Ali as mitigating evidence in the second stage.

Ground 20: Appellant received ineffective assistance of counsel, both at trial and on appeal, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.
Ineffective assistance of counsel on appeal.
Ineffective assistance of counsel at trial.
    a.    failure to provide a consistent defense in mitigation.
    b.    failure to present evidence of the effects of PCP use.
    c.    failure to offer the report of Dr. Cunningham and DHS records as exhibits.
    d.    failure to object to error at trial or request admonishment.

Ground 21: Incidents of prosecutorial misconduct deprived Appellant of a fair trial/ sentencing proceeding in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.
    a.    The prosecutor repeatedly elicited information from a prospective juror which had no legitimate purpose other than to alarm the other jurors.
    b.    The prosecutor suggested that the sentencing option of life with possibility of parole should not be considered by the jury.
    c.    The prosecutor improperly suggested that the death penalty would have been available even if only murder had been alleged.
    d.    The prosecutor mischaracterized the consequences of the jury finding mitigating evidence that outweighed the evidence of aggravation.
    e.    The prosecutor asked for the jury to sympathize with the victims and their families.
    f.    The prosecutor was wrong to suggest that the defense expert was testifying to whatever defense counsel paid him to say (and therefore lying).
    g.    The prosecutor intentionally misled the jury into believing that Appellant's knowledge of the difference between right and wrong was non-statutory aggravator.

Ground 22:   The accumulation of error in this case deprived Appellant of due process of law and a reliable sentencing proceeding, therefore necessitating reversal pursuant to the Eighth and Fourteenth Amendments to the United States Constitution as well as Article II, §§ 7 and 9 of the Oklahoma Constitution.

(Dkt. # 1). Significantly, the grounds for relief identified in the habeas petition are identical to the claims raised in Petitioner's direct appeal to the OCCA. See Dkt. # 9, Exs. 4 and 5. In response to the petition, Respondent argues that many of Petitioner's claims relate to his death sentences and were rendered moot by the OCCA's reversal of the death sentences. See Dkt. # 9. As to the remaining claims, Respondent argues that Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d). Id.

## ANALYSIS

**A. Exhaustion**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his claims to the OCCA on direct appeal. Therefore, he has exhausted state court remedies.

**B. Evidentiary hearing**

The Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**C. Claims related to imposition of death sentences are moot**

With the exception of grounds 6, 7, 16, part of 20, and 22, all of Petitioner's claims concern events at trial affecting or resulting in the imposition of death sentences. However, as discussed

above, the OCCA reversed Petitioner's sentences of death after finding merit to his claims raised in grounds 3, 4, and 17.

"Article III of the United States Constitution only extends federal judicial power to cases or controversies." United States v. Meyers, 200 F.3d 715, 718 (10th Cir. 2000). "A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." Aragon v. Shanks, 144 F.3d 690, 691 (10th Cir. 1998). To satisfy the case or controversy requirement, the petitioner "must have suffered or be threatened with an actual injury traceable to the respondents and likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). A petitioner must "continue to have a personal stake in the outcome" of his case in order to satisfy the case or controversy requirement of Article III. Spencer, 523 U.S. at 7.

In this case, the relevant inquiry as to any ground related to Petitioner's original death sentences is whether Petitioner is subject to collateral consequences adequate to meet the injury-in-fact requirement of Article III. Spencer, 523 U.S. at 7; see also Gille v. Booher, No. 00-6106, 2000 WL 1174612 (10th Cir. Aug. 18, 2000) (unpublished).[2] Clearly, grounds 3, 4, and 17 in this habeas actions are moot since the OCCA granted Petitioner's requested relief. In addition, grounds 1, 2, 5, 8-15, 18, 19, most of ground 20,[3] and 21 all relate to second stage voir dire, second

---

[2]This and other unpublished opinions are cited herein for persuasive value. See 10th Cir. R. 32.1(A).

[3]In ground 20, Petitioner identifies four areas of ineffective assistance of trial counsel. The first and third areas identify deficiencies in trial counsel's performance that contributed to imposition of the death sentences. Specifically, Petitioner claims that trial counsel performed deficiently in failing to provide a consistent defense in mitigation during the sentencing phase and in failing to offer expert's report and DHS records as exhibits. In his second category of ineffective assistance, Petitioner argues, in part, that trial counsel provided ineffective assistance in failing to

stage evidence, second stage instructions, aggravators and mitigators, and are relevant only when considered in context with the death sentences originally imposed against Petitioner. Although the OCCA did not specifically address those additional grounds in its order granting relief from the death sentences, they are nonetheless moot as Petitioner has been resentenced to life without the possibility of parole. In summary, the Court finds grounds 1-5, 8-15, 17-19, most of ground 20, and 21 are moot and shall be denied on that basis.

## D. Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court

---

present evidence during the sentencing phase of the effects of PCP use. Those claims all relate to counsels' omission of mitigation evidence, evidence that may have affected the jury's decision to recommend imposition of sentences of death. As Petitioner received relief from his death sentences, those claims of ineffective assistance of counsel are moot. In his second category of ineffective assistance, Petitioner also claims that trial counsel provided ineffective assistance in failing to present evidence during the guilt/innocence phase of the effects of PCP use. That claim is not moot and will be addressed herein. He further identifies a fourth category of ineffective assistance claims: that counsel performed deficiently in failing to object at trial or to request that the jury be admonished. Within that fourth category, Petitioner identifies eight (8) instances of trial counsel's failure to object or request admonishment. The instances identified as numbers 1, 2, 4, 5, 7, and the part of 8 concerned with second stage objections all relate to the death sentences and are moot as a result of the OCCA's decision reversing the death sentences. Only instances numbered 3, 6, and the part of 8 concerned with voir dire objections are not moot and will be addressed herein.

8

applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).

In this case, the OCCA affirmed the judgment of the trial court, thereby denying relief on grounds 6, 7, 16, part of 20, and 22 on direct appeal. Therefore, those claims will be reviewed pursuant to § 2254(d).

**1. Admission of videotaped statement (ground 6)**

As his sixth ground of error, see Dkt. # 1, Petitioner claims that his videotaped statement was admitted in violation of his Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. The OCCA rejected this claim on direct appeal, as follows:

> In Proposition VI, Jones claims he gave an involuntary and thus inadmissible statement to police, and filed a pre-trial motion to suppress his statement. The trial court found that the statement was in fact freely and voluntarily given after proper Miranda warnings.
>
> The evidence produced at a December 16, 2003 hearing shows that while Jones initially invoked his right to counsel, he reinitiated the interrogation after consulting with an attorney. The attorney consulted with Jones for approximately twenty-five minutes, after which he advised Jones and the Tulsa Police Officers that he would be representing Murtaza Ali and not Jones due to a conflict of interest. The attorney also told the Tulsa Police Officers that he had instructed Jones not to speak with them. Jones ignored the advice and reinitiated the interrogation.
>
> Jones now claims that his statement was involuntary because the attorney knew he had a conflict of interest when he gave Jones legal advice. First, Jones waived this argument by failing to object at trial to the admission of the videotape. Second, no evidence suggests that the attorney's visit with Jones affected the voluntariness of his confession. Third, the totality of evidence at the hearing established that the statement was voluntary. Jones was properly Mirandized and reinitiated the interrogation. No evidence shows that he was coerced or intoxicated, and sufficient evidence supports the trial court's ruling that the statements were voluntary and admissible. This Proposition is denied.

See Dkt. # 9, Ex. 1 (Jones v. State, 134 P.3d at 153 (footnote omitted)).

Under the Due Process Clause a confession is involuntary "if the government's conduct causes the defendant's will to be overborne and his capacity for self-determination critically impaired." United States v. McCullah, 76 F.3d 1087, 1101 (10th Cir. 1996) (internal quotation marks omitted). Under Miranda,[4] waiver of the right to counsel and the right to remain silent must be knowing, voluntary and intelligent – "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Brown, 287 F.3d 965, 973 (10th Cir. 2002). Both tests require a reviewing court to consider the totality of the circumstances, including the individual characteristics of the defendant. See McCullah, 76 F.3d at 1101; Brown, 287 F.3d at 973.

Nothing in the record suggests that Petitioner's videotaped statement was either coerced in violation of the Due Process Clause, or that his waiver of Miranda rights was not knowing, voluntary, and intelligent. Prior to admission of the videotaped interview, the trial court conducted a Jackson v. Denno[5] hearing outside the presence of the jury. See Dkt. # 10-1, Tr. dated Dec. 16, 2003. Sergeant Mike Huff testified that after Petitioner was read his rights under Miranda, Petitioner waived his rights, signed a rights waiver form, and requested that the detective contact attorney Rick Dunn. Id. at 17. At around 3 p.m., Mr. Dunn came to the police station and spoke privately with Petitioner for 20-25 minutes. Id. at 19, 22. Mr. Dunn then "stepped out of the room and said that he represented Ali Murtaza or Murtaza Ali, and that this would be a conflict representing him, but

---

[4]Miranda v. Arizona, 384 U.S. 436 (1966).

[5]Jackson v. Denno, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

he did tell Mr. Jones not to talk to us." <u>Id.</u> at 22. At around 4 p.m., Petitioner reinitiated a conversation with Sergeant Huff, by telling him he wanted to make a statement. <u>Id.</u> Sergeant Huff testified that he "re-advised Petitioner of his <u>Miranda</u> rights and went over the fact that he reinitiated this contact with me and that this was his choice." <u>Id.</u> at 23. He further testified that Petitioner did not appear to be under the influence of drugs or alcohol, he appeared to understand, and no threats or promises were made. <u>Id.</u> at 25, 26. Petitioner proceeded to talk with Sergeant Huff about the murders at the Lucky Trip convenience store. <u>Id.</u> at 26.

Upon consideration of the record, including the transcript of the <u>Jackson v. Denno</u> hearing, the videotaped statement, and the trial testimony of Sergeant Huff, the Court finds that Petitioner understood and voluntarily waived his rights to counsel and to remain silent when he reinitiated contact with Sergeant Huff. There is no evidence of police coercion, trickery, or psychological pressure. If the suspect himself reinitiates conversation after requesting counsel, law enforcement authorities may question him. <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981) (holding that "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police"); <u>Miranda</u>, 384 U.S. at 457-58; <u>Stemple v. Workman</u>, 418 Fed. Appx. 732 (10th Cir. 2011) (unpublished). The Court finds Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

## 2. Failure to issue lesser-included offense instructions as to Count II (ground 7)

As his seventh ground of error, Petitioner complains that fundamental error occurred when the trial court refused to issue a lesser included instruction on First Degree Manslaughter With a Dangerous Weapon, as to the murder of Sterling Mullis as charged in Count II, and as requested by trial counsel. See Dkt. # 1 at 58-63. He also claims that the trial court erred in failing to sua sponte instruct on the offense of Second Degree Murder as to Count II. Id. at 60. The OCCA rejected these claims, as follows:

> The First Degree Manslaughter/With a Dangerous Weapon instruction was not supported by the evidence. Jones walked into the convenience store with the intent to kill Rahaman. While doing so, he was grabbed by Mullis who was trying to prevent that murder. Jones then shot and killed Mullis. Jones contends that he was "scared" when Mullis grabbed him, causing him to act in the heat of passion. Heat of passion requires adequate provocation. Being "scared" after being grabbed while committing First Degree Murder does not suffice. Jones was not entitled to a First Degree Manslaughter instruction. This argument is denied.
>
> Likewise, the Second Degree Murder instruction was unsupported by the evidence. The essential difference between First and Second Degree Murder is intent to kill. First Degree Murder requires deliberate intent to end human life, which can be instantly formed and inferred from the fact of the killing. Second Degree Murder requires an eminently dangerous act, committed by one with a depraved mind. It does not require intent to kill. A Second Degree Murder instruction demands evidence that the defendant did not intend to kill the victim. No such evidence exists. Jones was shooting Rahaman when Mullis grabbed him. Jones then shot Mullis in the neck at close range. The evidence supports the inference that Jones intended to kill Mullis. Thus, no Second Degree Murder instruction was warranted. This Proposition is denied.

(Dkt. # 9, Ex. 1 (Jones v. State, 134 P.3d at 154 (footnotes omitted)).

As a preliminary matter, and as discussed above, Petitioner has been resentenced to life without the possibility of parole and is no longer under a sentence of death. As a result, this is a non-capital case. Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense

instruction.  Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). For that reason, Petitioner is not entitled to habeas relief on his claim challenging the trial court's failure to issue lesser-included offense instructions.

In addition, it is well established that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Petitioner has failed to demonstrate that the OCCA's adjudication of these claims was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2). The Court agrees with the OCCA's assessment that the evidence did not support an instruction on either First Degree Manslaughter or Second Degree Murder as to the murder of Sterling Mullis. Uncontroverted and unchallenged testimony presented at trial

demonstrated that Petitioner shot Mullis in the neck at close range after Mullis grabbed him in an effort to stop the shooting. See Dkt. # 10-6, Tr. Trans. at 773-74. There was no evidence that Petitioner acted in the "heat of passion," as required to support an instruction on First Degree Manslaughter. Nor did any evidence suggest that Petitioner did not intend to kill Mullis. Instead, the medical examiner testified that Mullis died as a result of a contact gunshot wound to the neck. See Dkt. # 10-7, Tr. Trans. at 953, 955. As a result, instructions on the lesser included offenses were not warranted. Petitioner's trial was not rendered fundamentally unfair as a result of the trial judge's failure to issue lesser included offense instructions, either sua sponte or as requested by Petitioner. Petitioner is not entitled to habeas corpus relief under § 2254(d) on ground 7.

### 3. Double jeopardy violation (ground 16)

In ground 16, Petitioner alleges that the State's use of the same evidence to support his conviction for First Degree Felony Murder in Count II and the aggravating circumstances found by the jury to support imposition of the death penalty for Count II violates the prohibition against double jeopardy. See Dkt. # 1. Specifically, Petitioner argues that the fact that he was convicted of two murders cannot support both the felony murder conviction in Count II and the aggravators, which both rely on the existence of two murder convictions. See id. at 91-92. The relief sought by Petitioner on direct appeal was reversal of his conviction for First Degree Felony Murder in Count II. Id. at 92. The OCCA addressed the merits of this claim as it affected the guilt/innocence stage of trial. On direct appeal, the OCCA applied the Supreme Court's holding in Lowenfield v. Phelps, 484 U.S. 231, 246 (1988) (use of same evidence to prove guilty and impose punishment does not offend double jeopardy), and found as follows:

> Jones argues in Proposition XVI that double jeopardy and 21 O.S.2001, § 11 were violated when the same evidence was used to support his conviction for First

14

Degree Felony Murder in Count II and the aggravating circumstances found by the jury supporting the death penalty. It follows, he argues that his conviction for First Degree Felony Murder in Count II must be reversed. Jones concedes that the Supreme Court has rejected this argument when it specifically found that the use of identical evidence to support both an element of the crime for which the defendant was convicted and an aggravating circumstance found by the jury at sentencing does not violate the Constitution. We agree. This Proposition is denied.

(Dkt. # 9-1, Ex. 1 (Jones v. State, 134 P.3d at 154 (footnotes omitted)).

To the extent this claim is not moot because of the sentencing relief granted as to the death sentences, the Court finds Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d). Nothing in the petition suggests that the OCCA's ruling was contrary to, or an unreasonable application of, controlling Supreme Court precedent. The Court finds that the OCCA identified the correct Supreme Court case, Lowenfield, and reasonably applied the holding of that case. There was no double jeopardy violation. Petitioner is not entitled to habeas corpus relief on this claim.

### 4. Ineffective assistance of counsel (ground 20)

Petitioner claims that he received ineffective assistance of both trial and appellate counsel. See Dkt. # 1. However, Petitioner fails to provide a factual basis for any claim of ineffective assistance of appellate counsel.[6] Allegations that are conclusory in nature and not supported with factual averments will not support a claim of ineffective assistance of counsel. United States v.

---

[6]In response to the petition, see Dkt. # 9, Respondent explains that in a separate motion filed at the OCCA, appellate counsel asked to withdraw from representing Petitioner due to a conflict of interest. Respondent provides appellate counsel's motion to withdraw wherein counsel explained that an actual conflict of interest existed or may have existed due to the fact that he was employed by the same office that employed trial counsel. See Dkt. # 9-13, Ex. 12. The OCCA denied the motion to withdraw and directed appellant's brief to be filed as scheduled. See Dkt. # 9-14, Ex. 13. To the extent Petitioner intended his ineffective assistance of appellate counsel claim as raised in his habeas petition to mirror the conflict of interest claim presented to the OCCA, nothing filed by Petitioner in this habeas corpus action suggests that he is entitled to relief under § 2254(d).

Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994). For that reason, the Court finds Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of appellate counsel.

As to the claims of ineffective assistance of trial counsel, the Court has stated above that almost all of the claims were rendered moot when the OCCA granted relief to Petitioner from his death sentences. However, four instances of ineffective assistance identified by Petitioner go to the validity of his convictions for First Degree Murder. Specifically, Petitioner's claims that trial counsel provided ineffective assistance in failing to present evidence of PCP use during the guilt/innocence phase, in failing to object to the admission of his videotaped confession, in failing to request that the jury be instructed on the lesser included offense of Second Degree Murder, and in failing to ask that the jury be admonished after objections were sustained during voir dire are not moot. Although the OCCA did not analyze Petitioner's claims of ineffective assistance of trial counsel, that court nonetheless affirmed Petitioner's convictions thereby denying relief on these claims. In Aycox v. Lytle, 196 F.3d 1174 (10th Cir. 1999), the Tenth Circuit determined that a state court's result is owed § 2254(d) deference "even if its reasoning [was] not expressly stated." Id. at 1177. Consequently, this Court is required to uphold the OCCA's decision, unless "independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." Id. at 1178.

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was

prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).

A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential. " Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

In this case, Petitioner has failed to demonstrate entitlement to relief under § 2254(d). Petitioner stated in his videotaped statement that he had been smoking PCP and that he "was out of [his] mind" at the time of the murders. Therefore, it may have been prudent for trial counsel to present evidence concerning the effects of PCP use. However, even assuming counsel performed deficiently, the Court finds that, in light of the overwhelming evidence of premeditation and

deliberation and the lack of evidence, other than Petitioner's own statement, of any diminished capacity due to PCP use, Petitioner cannot demonstrate that he was prejudiced by trial counsel's failure to present evidence regarding the effects of PCP use during the guilt/innocence phase. Petitioner argues that the evidence of PCP use was relevant to the issue of intent. However, the jury heard evidence that Petitioner understood, at least three days before the murders, that his purpose in going to the Lucky Trip convenience store was to shoot and kill Mohamed Rahaman. See Dkt. # 10-6, Tr. Trans. at 866-870. In addition, the evidence demonstrating that Sterling Mullis died as a result of a close contact gunshot wound to the neck, see Dkt. # 10-7 at 953, reflects Petitioner's deliberate intent to cause the death of Mullis. The jury also heard Petitioner's girlfriend, Shawnitra Purnell, testify that Petitioner "looked normal" when she saw him at Genesis Club shortly after the murders. See id. at 892. In light of that evidence, Petitioner cannot demonstrate a reasonable probability that, but for counsel's failure to present first stage evidence of the effects of PCP use, the result of the first stage proceeding would have been different.

Next, trial counsel did not perform deficiently in failing to object to the admission of his videotaped statement or in failing to request that the jury be instructed on the lesser included offense of Second Degree Murder. As discussed in Part D(1) above, a Jackson v. Denno hearing was held prior to trial and the trial judge determined that the videotaped statement was voluntary. Petitioner has failed to demonstrate that his videotaped statement was either coerced in violation of the Due Process Clause, or that his waiver of Miranda rights was not knowing, voluntary, and intelligent. As a result, there was no basis for an objection and trial counsel did not perform deficiently in failing to lodge an objection. Similarly, Petitioner's claim concerning lesser included offense instructions, as discussed in Part D(2) above, lacks merit. The evidence presented at trial did not support the

issuance of a Second Degree Murder instruction as to the murder of Sterling Mullis. Therefore, trial counsel did not perform deficiently in failing to request a Second Degree Murder instruction as to Count II.

Lastly, Petitioner cannot demonstrate that he suffered prejudice as a result of trial counsel's failure to request that the jury be admonished after objections to the prosecutor's voir dire questions were sustained. As noted by Respondent, this is not a case where inadmissible or prejudicial evidence erroneously came before the jury resulting in a possibly tainted verdict. Instead, after trial counsel objected to the prosecutor's questions and the objections were sustained, no answers were allowed. See Dkt. # 10-5, Tr. Trans. at 442-43, 460-61, 574. Therefore, no admonishments to disregard were necessary. Petitioner cannot satisfy the prejudice prong of Strickland.

In summary, Petitioner has failed to demonstrate that the OCCA's rejection of his claims of ineffective assistance of trial counsel was contrary to, or an unreasonable application of federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

**5. Cumulative error (ground 22)**

In ground 22, Petitioner alleges that the accumulation of error deprived him of due process of law and a reliable sentencing proceeding. Although the OCCA did not specifically address Petitioner's claim of cumulative error, that court's decision to affirm Petitioner's convictions is entitled to deference under the AEDPA. Aycox, 196 F.3d at 1177-78.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no

longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). Having found no error in this case, the Court finds no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim is contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this ground.

## E. Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). As to those claims denied as moot, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for a writ of habeas corpus (Dkt. # 1) is **denied**. A separate judgment shall be entered in this matter. A certificate of appealability is **denied**.

DATED THIS 21st day of June, 2012.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE